### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERIKA WESLEY, | ) <br> ) |
| Plaintiff, | ) Civil Action No. 1:25-CV-1126 (JMC) <br> ) <br> ) |
| v. | ) Judge: Jia M. Cobb <br> ) |
| PAMELA BONDI, Attorney General of the United States, named in her official Capacity, as head of the Department of Justice, | ) <br> ) <br> ) <br> ) |
| Defendant. | ) <br> ) <br> ) |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S
### MOTION TO COMPEL DISCOVERY RESPONSES

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. BACKGROUND ..................................................................................................................... 1
    A.    Factual Background ................................................................................................ 1
    B.    Procedural Background........................................................................................... 1

III. ARGUMENT ........................................................................................................................... 3
    A.    Plaintiff May Respond in Accordance with Rule 33(d) to Defendant's Overbroad Contention Interrogatories 4, 5, 6, 7, 10, 16, 17 .................................. 3
    B.    Plaintiff's Response to Interrogatory 15 Is Sufficient ........................................... 9
    C.    Interrogatory 18 Seeks Damages Information that Defendant Already Has and Will Receive in More Final Form Through Expert Discovery ....................... 9

IV. CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Benham v. Rice*,
   238 F.R.D. 15 (D.D.C. 2006)..............................................................................................8

*Covad Commc'ns Co. v. Revonet, Inc.*,
   258 F.R.D. 17 (D.D.C. 2009)............................................................................................11

*English v. Wash. Metro. Area Transit Auth.*,
   323 F.R.D. 1 (D.D.C. 2017)................................................................................................5

*\*Everett v. USAir Grp., Inc.*,
   165 F.R.D. 1 (D.D.C. 1995)............................................................................................5, 6

*Hemp Indus. Ass'n v. U.S. Drug Enf't Admin.*,
   No. 20-2921, 2020 WL 12918344 (D.D.C. Dec. 15, 2020).................................................5

*Jefferson v. Austin*,
   345 F.R.D. 249, 252 (D.D.C. 2024)..................................................................................11

*Pederson v. Preston*,
   250 F.R.D. 61 (D.D.C. 2008)..............................................................................................8

*\*United States v. Anthem, Inc.*,
   No. 16-CV-1493, 2016 WL 11755527 (D.D.C. Sept. 30, 2016), *report and recommendation adopted*, No. CV 16-1493, 2016 WL 11755535 (D.D.C. Oct. 14, 2016) ..............................................................................................................................5, 11

*United States v. Dunkel*,
   927 F.2d 955 (7th Cir. 1991) ..............................................................................................7

*United States v. Kellogg Brown & Root Servs., Inc.*,
   284 F.R.D. 22 (D.D.C. 2012)..............................................................................................8

*United States ex rel. Barko v. Halliburton Co.*,
   241 F. Supp. 3d 37 (D.D.C. 2017), *aff'd*, 709 F. App'x 23 (D.C. Cir. 2017)......................6

*\*United States ex rel. Pogue v. Diabetes Treatment Ctrs. Of Am., Inc.*,
   235 F.R.D. 521 (D.D.C. 2016).......................................................................................6, 9

**FEDERAL RULES OF CIVIL PROCEDURE**

\*Fed. R. Civ. P. 26................................................................................................................10

\*Fed. R. Civ. P. 33........................................................................................................5, 6, 7, 8

I.  **INTRODUCTION**

Defendant served overbroad interrogatories, attempting to bypass depositions and expert discovery. Nevertheless, Plaintiff has supplemented, and *continues* to supplement, her responses to the interrogatories at issue here. Because her approach suffices, Defendant's Motion should be denied.

II. **BACKGROUND**

Plaintiff outlines her claims and the procedural history of this dispute below.

  A.  **Factual Background**

In early 2018, Plaintiff attended Defendant's Basic Field Training Course, where she was denied reasonable accommodations and subjected to harassment based on her sex and disability. ECF No. 111-1 (Sixth Am. Compl. (6AC)) ¶¶ 33-44. She was not subject to a Trainee Review Board and graduated from Basic Training. *Id.* ¶ 45. After Plaintiff graduated from Basic Training as an Intelligence Analyst (IA), she worked in the FBI's Phoenix Division beginning in April 2018. *Id.* ¶ 45. After Plaintiff publicly participated in this litigation, she experienced further denial of reasonable accommodations and retaliation while working in Phoenix Division. *Id.* ¶¶ 45-62.

In this action, Plaintiff brought four claims: (1) a hostile work environment based on sex at Basic Training, in violation of Title VII, *id.* ¶¶ 73-83; (2) denial of reasonable accommodations, in violation of the Rehabilitation Act, *id.* ¶¶ 84-91; and (3) retaliation at Phoenix Division, in violation of Title VII and the Rehabilitation Act, *id.* ¶¶ 92-98.

  B.  **Procedural Background**

On June 12, 2024, Defendant served its first set of interrogatories on all Plaintiffs, including Plaintiff Wesley.[1] All Plaintiffs timely served objections. As the parties neared settlement

---

[1] That Defendant did not serve these requests until two years into discovery undermines Defendant's position that it may refuse to comply with Plaintiff's ESI proposal, with respect to

1

agreements in principle for all but two Plaintiffs, they met and conferred on Defendant's interrogatories on August 8, 2024. At this conference, Plaintiff Wesley agreed to serve supplemental responses with respect to some interrogatories. She did so on August 26, 2024. Although there was no stay on discovery in this matter,[2] Defendant did not raise any concerns about Plaintiff's supplemental responses for *five months*—until it served a letter raising purported deficiencies on January 22, 2025. Dkt. 120-1.

On February 6, 2025, to facilitate a more productive conference for the parties' scheduled call, Plaintiff emailed her position with respect to which interrogatories she would supplement, which were likely moot, and on which she stood on her objections. On the parties' meet and confer call on February 11, 2025, Plaintiff explained her positions and stated that she would endeavor to supplement as soon as possible, mindful of the deadline for motion practice. Neither party, however, discussed specific dates. Indeed, Defendant was still considering which interrogatories it intended to forgo in light of the dismissal of the class claims.

In a follow-up letter on February 13, 2025, Plaintiff reiterated her positions, including offered compromises. Dkt. 119-6. Later that day, Defendant responded by letter, stating it expected to receive supplemental responses by March 7, 2025. Dkt. 120-2 at 2. Plaintiff responded the next day, explaining that she would endeavor to supplement as soon as practicable. Ex. 1 at 1. She also restated her position—articulated on the meet and confer call but not yet engaged with by Defendant—on two interrogatories that remained in dispute. *Id.* at 1-2. On March 4, 2025, Defendant again ignored Plaintiff's explanations and insisted that it needed her responses by March 7, or else it would seek to postpone briefing the omnibus motion to compel which Plaintiff

---

responding to her discovery requests, as "belated." *See* Dkt. 119-1 at 18-22.

[2] At the October 31, 2024 status conference, Defendant agreed that discovery was and should be ongoing, at least with respect to Plaintiff's claims involving her time at Phoenix Division.

had sought to file as early as October 2024.[3] Dkt. 120-5 at 1-2. On March 5, 2025, Plaintiff responded that she would oppose an extension request, given the protracted pace of this case. Dkt. 119-10 at 1-2.

Although Plaintiff required more time to further supplement her interrogatory responses, in part because Defendant continues to make rolling document productions, Plaintiff endeavored to meet Defendant's arbitrary deadline by serving her second supplemental responses on March 7, 2025. Dkt. 120-3. Defendant called an impasse in its March 26, 2025 correspondence.[4] Dkt. 120-4. In her Second Supplemental Responses, Plaintiff reserved her right to supplement her responses, which she did in serving her Third Supplemental Responses earlier today. Ex. 2.

### III.   ARGUMENT

Plaintiff's responses are adequate, particularly given the broad contention interrogatories at issue, and the present stage of discovery.

    **A.**    <u>**Plaintiff May Respond in Accordance with Rule 33(d) to Defendant's Overbroad Contention Interrogatories 4, 5, 6, 7, 10, 16, 17**</u>

Defendant takes issue with Plaintiff's responses to seven overbroad contention interrogatories. Those ask Plaintiff to identify or describe:

> Interrogatory 4: "*any statements or comments*, whether written or oral, made by any FBI agent, official, or employee during the relevant time period that you contend was *discriminatory or retaliatory*";

---

[3] While insisting on Plaintiff providing all responses nearly a month before the Motion to Compel deadline, Defendant did not respond to Plaintiff with respect to all deficiencies raised on specific redacted documents even by the April 4, 2025 deadline to file omnibus Motions to Compel. Defendant responded regarding some of the documents discussed in Plaintiff's Motion, Dkt. 119 at 13-18, on the afternoon of April 4, 2025. Although Plaintiff wrote back that day, and followed up on three additional occasions, Defendant has still not responded or even acknowledged receipt of Plaintiff's message.

[4] Defendant appears to have acknowledged the soundness of Plaintiff's position on Interrogatories 14 and 23, which it does not include in its Motion. *Compare* Dkt. 120-4 at 2, *with* Dkt. 120 at 5 n.4, 6 n.5.

3

>Interrogatory 5: "*each and every employment action* that you allege an agent, official or employee of the United States took against Plaintiffs, and which you *contend was motivated by gender, sex, and/or disability* in your presently-pending complaint in this civil action";
>
>Interrogatory 6: "*each and every person* who you believe took any action against any of the Plaintiffs in this case that was *motivated by gender, sex, or disability* including, but not limited to, persons who issued suitability notations, sat on the Trainee Review Board, evaluated[5] . . . New Intelligence Analyst Trainees, or otherwise interacted with or supervised . . . New Intelligence Analyst Trainees at the Basic Field Training Course";
>
>Interrogatory 7: "*each and every instance* in which you observed *discriminatory conduct, behavior, or actions motivated by gender, sex, or disability* including, but not limited to, the issuance of (or failure to issue) suitability notations, convening (or not convening) the Trainee Review Board, evaluating . . . New Intelligence Analyst Trainees, or any other instance of gender, sex, or disability-related bias against . . . New Intelligence Analyst Trainees at the Basic Field Training Course";
>
>Interrogatory 10: "*each instance* in which each Plaintiff contends she was *unlawfully retaliated* against during the relevant time period by any agent, official, or employee of the Defendant";
>
>Interrogatory 16: "*each and every basis* for your *contention* that, for purposes of this action, that Plaintiff is/was *disabled*"; and
>
>Interrogatory 17: "*each and every disability-related accommodation* each Plaintiff has requested from the Defendant during the relevant time period, including when and to whom that Plaintiff made such request, the basis for each request, and the outcome of each request."

Dkt. 120-3 at 9-20, 27-30, 34-39 (emphases added). Interrogatories 4 and 5 also ask Plaintiff to name "the agent, official, or employee" who made each comment (Interrogatory 4) or initiated or took each action (Interrogatory 5), in addition to each comment or action's date and substance.

---

[5] Defendant's discovery requests were served on all Plaintiffs in this matter and not subsequently revised. Thus, there are references in the Interrogatories to New Agent Trainees (NATs). Plaintiff, however, did not attend the Basic Field Training Course with NATs as she was a New Intelligence Analyst Trainee (NIAT). Throughout this brief, she omits the requests' references to NATs.

4

Defendant's interrogatories suffer from several defects. First, they are largely contention interrogatories, *contra infra* at 8-9, that are premature at this stage of discovery. *See* Fed. R. Civ. P. 33(a)(2) (courts can order that contention interrogatory "need not be answered until designated discovery is complete, or until a pretrial conference or some other time"). With each of Defendant's rolling document productions, Plaintiff learns of more comments, actions, and relevant context that support her legal claims and to which she was not previously privy. Courts often defer contention interrogatories until later in the discovery period to avoid the redundant supplementation required by Defendant's position. *See, e.g.*, *English v. Wash. Metro. Area Transit Auth.*, 323 F.R.D. 1, 19 (D.D.C. 2017) ("the obligation to respond [to contention interrogatories] is often deferred" until the end of discovery); *Hemp Indus. Ass'n v. U.S. Drug Enf't Admin.*, No. 20-2921, 2020 WL 12918344, at *2 (D.D.C. Dec. 15, 2020) (same).

Far from meeting its burden to show why it requires responses now, Defendant has not identified any reason for this departure from the norm. *See, e.g.*, *United States v. Anthem, Inc.*, No. 16-CV-1493, 2016 WL 11755527, at *9 (D.D.C. Sept. 30, 2016), *report and recommendation adopted*, No. 16-1493, 2016 WL 11755535 (D.D.C. Oct. 14, 2016) ("There is considerable support for deferring contention interrogatories until the end of the discovery period, unless the party serving the interrogatories early can convincingly demonstrate that early answers will contribute meaningfully" (citation and internal markings omitted)); *Everett v. USAir Grp., Inc.*, 165 F.R.D. 1, 3 (D.D.C. 1995) ("While [contention] interrogatories are permitted, the obligation to respond to them is often postponed until near the end of the discovery period unless the proponent carries its burden of demonstrating why they are necessary earlier on."). The prematurity of these interrogatories is even more striking given that Defendant has not even noticed Plaintiff's deposition yet. That forum will be substantially more productive for this type of omnibus

5

questioning. *See, e.g.*, *United States ex rel. Barko v. Halliburton Co.*, 241 F. Supp. 3d 37, 77 (D.D.C. 2017), *aff'd*, 709 F. App'x 23 (D.C. Cir. 2017) (rejecting overbroad and unduly burdensome interrogatories while citing authority stating that interrogatories "are not intended to take the place of depositions" and should not "require plaintiff to provide the equivalent of a narrative or otherwise detailed account of her entire case in chief, together with identification of virtually all supporting evidence for each fact" (citations omitted)); *Everett*, 165 F.R.D. at 3 ("Insofar as these interrogatories call for defendants to separately articulate the underlying facts upon which they base their defenses, however, they are contention interrogatories and defendants need not respond at this time.").

Second, Interrogatories 4, 5, 16, and 17 (as well as 15 and 18, discussed below, *see infra* at 9-11) are each two or more requests disguised as one. For instance, Interrogatory 17 asks Plaintiff to identify not only each accommodation requested, but also to identify the person receiving the request as well as the basis and outcome of each request. *See, e.g.*, *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 235 F.R.D. 521, 524 (D.D.C. 2006) (finding impermissibly compound an interrogatory that asks to identify individuals that the relator contends engaged in unlawful conduct, as well as asking him to state all facts and identify all documents supporting contentions); *id.* at 524-26 (same for eight more interrogatories). Although Defendant has some wiggle room due to its withdrawal of four interrogatories, Dkt. 120 at 4, it still may not exceed its prescribed limit by serving compound requests. *See* Fed. R. Civ. P. 33(a)(1) (interrogatories limited to 25).

Plaintiff properly relied upon Fed. R. Civ. P. 33(d)(1) in providing her responses. Defendant criticizes Plaintiff's incorporation of documents by reference to Bates numbers as

beyond the scope of Rule 33(d).[6] Dkt. 120 at 9-10. The Rule authorizes a party to "answer an interrogatory" by "specifying the records" containing responsive information. Fed. R. Civ. P. 33(d)(1). Even Defendant in its Instructions contemplated that Plaintiffs could incorporate documents by reference. Ex. 3 at 2 (Instruction 3). Defendant takes aim at Plaintiff's qualification that the documents are exemplary and not exhaustive. Dkt. 120 at 9. But that is because, as she explained, her document "review will necessarily be ongoing because of Defendant's rolling productions," and because Defendant insisted she respond by March 7, when she had not completed her review of documents already produced. Dkt. 120-3 at 11, 14, 17, 20, 30, 39. As promised in those responses, and as Defendant encourages in the context of Interrogatory 18, Dkt. 120 at 8, Plaintiff has supplemented her responses, Ex. 2, and will continue to do so as document productions and her review continue on.

 Defendant's choices have further increased the burdensome nature of this task. Defendant insisted that it first review (before Plaintiff's counsel) all of Plaintiff's documents in its Discovery Processing Unit. That Unit returned the documents to Plaintiff as lumped together files, where each Beginning Bates number often contained hundreds of pages of separate documents in non-unitized form. Defendant's positions have made organizing documents, including identifying the pincite needles in a haystack, more difficult.

 Defendant implies that Plaintiff is making it hunt in the discovery like a pig looking for truffles. Dkt. 120 at 9-10. *Cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). That is not the case. First, many of the documents cited are from *Defendant*'s productions. As Defendant has repeatedly emphasized in seeking extensions, it only produces documents after multiple rounds

---

[6] Curiously, Defendant has not taken issue with Plaintiff's reliance on documents pursuant to Rule 33(d) for Interrogatories 1, 2, and 22. Dkt. 120-3 at 3-7, 45-47.

of review. *E.g.*, Dkt. 84, 91. Thus, no "scouring" is needed. *See, e.g., United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 29 (D.D.C. 2012) ("Although Interrogatory 1 requests relevant information and the [plaintiff] may not brush it off, the [plaintiff] is not required—through interrogatory response—to do [defendant's] document review."). Indeed, much of the materials in Plaintiff's responses were already collected in Plaintiff's declarations submitted in support of her motion for a preliminary injunction and a letter to the Office of Professional Responsibility in response to the proposal to terminate Plaintiff. This is enough. *See, e.g., Pederson v. Preston*, 250 F.R.D. 61, 65 (D.D.C. 2008) (agreeing with Defendant "that by specifying the ROI [Report of Investigation] records to be reviewed, his responses to Interrogatories Nos. 5, 10, and 24 complied with Rule 33(d) and are therefore sufficient"); *Benham v. Rice*, 238 F.R.D. 15, 24-27 (D.D.C. 2006) (finding party sufficiently answered interrogatories by stating that "[a]ll persons with knowledge were named in the ROIs, the records of administrative proceedings," and other documents). Defendant cannot with a straight face claim it does not "understand the allegations in [Plaintiff's] complaint," Dkt. 120 at 12, when they have been rehashed in internal agency proceedings several times over.

With respect to Interrogatories 16 and 17, it is true that these requests are differently situated than the others, as Plaintiff has consistently been privy to the topics at hand. Dkt. 120 at 10. But the best evidence of Plaintiff's disabilities are *medical records*, and the best evidence of the accommodations she sought are her *written accommodation requests*. Plaintiff's reliance on these documents to provide her response to these interrogatories is eminently reasonable and poses no prejudice to Defendant's ability to understand her claims. If Plaintiff were to sandbag Defendant with any new diagnoses not presented to the agency at the time the accommodations were sought, that would be a boon to arguments in defense of the actions taken. Both parties know what

disabilities Plaintiff has had and what accommodations she has sought, because they have exchanged documents saying as much. Plaintiff's referral to those documents is acceptable.

### B. Plaintiff's Response to Interrogatory 15 Is Sufficient

Interrogatory 15 is a compound interrogatory asking Plaintiff to "identify including by name, if known, all similarly situated . . . New Intelligence Analyst Trainees you contend were treated differently and/or more favorably than you during the Basic Field Training Course," *and* to "set forth the facts in support of each instance on which you rely." Dkt. 120-3 at 33. Plaintiff responded with the full names of three individuals and the partial name of one other who were NIATs she contends were treated differently with respect to disability and/or accommodations during her Basic Field Training Course. *Id.* at 34. Although Defendant did not identify deficiencies with this supplemental response prior to filing its Motion, Dkt. 120-4 at 1-4, it now takes issue that she did not provide all the facts supporting each identification and that she did not identify all male trainees who received more favorable treatment. Dkt. 120 at 11-12. The second argument is easily dispatched. Plaintiff supplemented her response to include further names as this interrogatory relates to her hostile work environment claim. Ex. 2. On the first, the request to identify the facts in support of each instance should be its own interrogatory. *See, e.g.*, *Pogue*, 235 F.R.D. at 524.

### C. Interrogatory 18 Seeks Damages Information that Defendant Already Has and Will Receive in More Final Form Through Expert Discovery

Interrogatory 18 seeks "a detailed breakdown of all monetary remedies [Plaintiff] seek[s] through this action, including the type of monetary relief sought (including front pay, back pay, and compensatory damages, if applicable), the dollar amount for each type of monetary relief sought, and the method utilized to calculate such monetary relief." Dkt. 120-3 at 39.

Defendant's disclaimer that it "does not in fact know what monetary relief [Plaintiff] seeks" is disingenuous. Dkt. 120 at 7. In March 2024—over a year ago—Plaintiff served a demand letter

9

in mediation that specified the types of relief Plaintiff Wesley sought, including back pay, front pay, and compensatory damages. She calculated portions of these amounts to the extent she could with then-available information (*e.g.*, she did not calculate lost pension benefits), and she explained how she reached the figures included.

Providing the same information in an interrogatory response, however, would be inappropriate. First, Plaintiff did not personally make the calculations. She therefore cannot attest to the accuracy of the calculations or the propriety of certain input choices (such as the interest rate to use for back pay, or the discount value to use in calculating net present value of front pay. Second, Plaintiff's counsel, who made the calculations available at present, should not be compelled to become a witness in her client's case. Most importantly, neither Plaintiff nor her anticipated expert economic witness should be subject to cross-examination on any differences between the expert calculations upon which Plaintiff will rely at trial, and the calculations that were performed for mediation purposes. Plaintiff is not offering herself (or her counsel) as expert witnesses to testify at trial on the methods used to calculate her damages.

Defendant's insistence that it merely seeks the same information as the Rule 26 initial disclosure requirement is not well-taken. Dkt. 120 at 8. Putting aside that Defendant elected to dispense with Rule 26 disclosures, Dkt. 65 at 2, Defendant requests information in content and format not required by Rule 26. Rule 26 also exempts material like attorney work product, which is protected from disclosure. Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring "a computation of each category of damages claimed by the disclosing party—who must also make available . . . the documents or other evidentiary material, *unless privileged or protected from disclosure*, on which each computation is based, including materials bearing on the nature and extent of injuries suffered" (emphasis added)). And most importantly, disclosures are not testimony under oath.

Plaintiff already provided over a year ago a breakdown of her damages to the best of her ability without expert assistance on the proper methodology for calculating the full scope of potential relief. She offered repeatedly to update those calculations in the mediation context as she is further able to refine her methodology. And she has promised to provide a full breakdown of calculations in an expert declaration when expert reports are due. Plaintiff has also supplemented her response to include the categories of monetary relief she seeks. Ex. 2. But Plaintiff cannot yet provide the final amounts sought and methodologies used. Nothing more can be expected of Plaintiff at this time. *See, e.g.*, *Jefferson v. Austin*, 345 F.R.D. 249, 252 (D.D.C. 2024) ("The non-movant may respond that 'they are unable to provide certain information sought while identifying the information they possess.'"); *Anthem*, 2016 WL 11755527, at *9 (finding that plaintiff's provision of "answers purportedly to the best of its ability at this time, including providing specific facts supporting its contention," is sufficient when plaintiff asserts that it is still gathering facts); *Covad Commc'ns Co. v. Revonet, Inc.*, 258 F.R.D. 17, 19 (D.D.C. 2009) ("[B]ecause the responding party has a continuing duty to supplement its answer, it is sufficient for a party to state that it is unable, at the time the answer is provided, to provide the information requested but will supplement its answers as information becomes available.").

## IV.  CONCLUSION

Plaintiff respectfully requests the Court to deny Defendant's Motion to Compel Discovery Responses.

Dated: May 5, 2025                              Respectfully submitted,

*/s/ Christine E. Webber*
Joseph M. Sellers (DC #318410)
Christine E. Webber (#439368)
Rebecca A. Ojserkis (#1781442)
Dana Busgang (#90006138)
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW, Suite 800
Washington, DC 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
jsellers@cohenmilstein.com
cwebber@cohenmilstein.com
rojserkis@cohenmilstein.com
dbusgang@cohenmilstein.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2025, a copy of the foregoing was filed via the Court's CM/ECF system and served on all counsel of record.

May 5, 2025                                         */s/ Christine E. Webber*
                                                                Christine E. Webber